(Superior Court of Cincinnati.)

Special Term, 1901.

HAROLD EVERHARDT v. THE UNITED STATES INVESTMENT & REDEMPTION COMPANY.

---

1. A receiver will not be appointed to wind up the affairs of a debenture company which is desirous of going into voluntary liquidation, the liabilities of which do not appear to exceed its assets by an amount greater than can be collected from its solvent stockholders who stand ready to respond to any proper contribution that is required of them.

2, Whether a corporation going into voluntary liquidation can be required to give bond for a faithful administration of its assets, *quaere.*

---

Rufus B. Smith, J.

This action is brought by the holder of a certificate of debenture issued by the defendant company, for which he paid six (6) dollars. E. H. Kuhlman, another certificate holder of a similar character, who paid $192.50, having been made a party, has filed an intervening petition asking the same relief as the plaintiff.

By consent of the parties to the action it was referred to Mr. A. B. Benedict as referee to ascertain and determine the facts and the law, and report the same to this court.

The referee has filed what has been called a "partial report," which I set out in full in this opinion because it states the issue in the case and explains the situation with which I am called upon to deal. The report is as follows:

"When referred, this case stood for hearing on a demurrer to the petition. Since then the demurrer has been withdrawn and an answr filed by the defendant, and the plaintiff has demurred thereto.

"The allegations of the petition, which are not denied by the answer, together with the admissions contained in the answer, show the following case:

"The defendant is a corporation organized under the laws of West Virginia, and is engaged in the business of selling what are known as certificates of debenture.

"One of these certificates is made part of the petition and admitted by the answer. The kind of business done is also admitted by the answer. The certificate purports to be a contract, whereby the holder agrees to make certain payments, in consideration of which the company is supposed to make certain promises. A careful reading of the certificate will show that the company, in fact, promises little, if anything, although the certificate is couched in such language as to lead an ordinary reader

of it to believe that very large profits are promised to be paid back within a short time, together with the sums deposited.

"The company, by the certificates, *reserves the option* to redeem any certificate on and after the third date of issue, by paying to the certificate holder values that are stated in a schedule printed on the back of the certificate. These values, if paid, would pay back to the certificate holder his deposits with enormous profits, exceeding one hundred (100) per cent. per annum. The certificate is calculated to make the reader believe that he will be paid back these sums by having his certificate redeemed, whereas the company only reserves an option to redeem. It is true the company promises that *'redemption shall occur* on the twenty-sixth days of March, June, September and December of each year,' but whether one, two or three, or how many, is not promised, nor is it promised that any particular certificate will be redeemed. This clause of the certificate does not differ much from the old advertisements of the Louisiana lottery, which read that 'drawings' will take place on certain days. The company reserves the right to redeem, 'in accordance with its methods of redemption in force at the time of such redemption.' No method of redemption is contracted for. It depends solely upon the will of the company. So far as the company goes, it may be determined by chance or in any way that the company chooses.

"As a matter of fact the certificate does not promise *ever* to pay back to the certificate holder the money he paid in. It is true it promises and agrees to pay back when the certificate matures, but when the certificate matures is not stated. Without dilating upon the terms of this supposed agreement, it is sufficient to state that under the decision of the Supreme Court in the case recently decided—State, on relation of the Attorney-General, v. the Interstate Savings Investment Company—the contracts or certificates issued by the defendant company are null and void. The scheme is a scheme of chance, is gambling and a lottery. In addition, the certificates issued are fraudulent and illusory. They obtain the money of the depositors through the use of language which is calculated to deceive any ordinary reader.

"As said by the Supreme Court in the case just decided:

"'The question here is not whether the promoters of the defendant company have intentionally devised a scheme to mislead and defraud, but whether that is the effect of it. The promoters and investors may be self deluded or satisfied to take the chance offered, but that does not alter the character of the scheme.'

"The court says further:

"'An inspection of the different classes of accumulative endowment certificates issued by the defendant discloses that in none of them does a certificate absolutely and certainly mature within any fixed and definite period; yet the certificates are all so drawn as to create the expectation, and to make it appear that they will mature in a period of one hundred and twenty months.'

"I find, as a matter of law, that the plaintiff's supposed contract with the defendant company is void, and that he is entitled to have his money back, together with six per cent. interest. It seems that he deposited six (6) dollars on August 24, 1900, and filed his petition in this case September 1, 1900.

"Another certificate holder has intervened and set up substantially the same case that the plaintiff sets up. I have not considered the question of the appointment of a receiver, or whether there is any fund in the hands of the defendant company held in trust for the plaintiff and other certificate holders which entitles him, or them, to an injunction against the defendant to prevent the defendant wasting or paying it away.

"'I make this partial report for the reason that the defendant company, through its attorneys, have represented to me that if their business is illegal, they desire to discontinue it and to distribute their assets to the creditors under the directions of the court. They assert that the assets of the company which are convertible immediately into cash amount to $83,626.81, of which $22,585.45 is in cash on deposit in the Fifth National Bank of this city, and the rest invested in bonds, which are selling at a premium and which cost $61,041.36, and which are now worth more. There are further assets, according to the representations made, consisting of unpaid subscriptions to the capital stock, and there are solvent stockholders ready to pay on their subscriptions an amount sufficient, with the assets, to meet the obligations, which are said to exceed $83,626.81 by about $4,000 or $5,000. The company also offers, through its attorneys, to give bond to faithfully distribute its assets under the directions of the court. The assets above represented to exist include what is deposited with the state treasurer."

Since the filing of the report of the referee the defendant company has filed a supplemental answer and cross-petition, making Isaac B. Cameron, state treasurer, a party defendant, in which it alleges that it has deposited with said treasurer $42,900 for the protection of investors in said certificates who are residents in Ohio; and praying that this amount may be ordered distributed according to law. Both sides move to confirm the report of the referee, and the plaintiff and the intervening petitioner, Kuhl-

man, have filed motions to appoint a receiver to take charge of the assets of the defendant company and distribute the same according to law.

It is admitted that the financial scheme of the defendant company falls within the inhibition of the decision of the Supreme Court; and the sole remaining question is as to the method to be pursued in winding up the affairs of the company.

This latter question resolves itself into two subsidiary questions, viz: (1) Shall the legal questions which will probably arise in the settlement of the affairs of the company be heard by the court itself or by a referee; and (2) pending the consideration of such questions, shall the assets of the company be placed in the hands of a receiver, who shall also recover from the stockholders any deficiency in the assets necessary to pay the debts of the corporation; or shall the company be permitted to retain and distribute the assets in its hands and itself to assess and recover from its stockholders a sufficient amount to pay any deficiency in the assets.

The question whether the case shall be sent to a referee to determine the legal questions that may arise in the distribution of the assets, or whether the court itself shall determine them, is not now before me for consideration. The sole question to be now passed upon is whether a receiver shall be appointed.

By the recent decision of our Supreme Court, it was held that it is the duty of the state treasurer to make distribution of the funds deposited in his hands by the company, and that such duty was not affected by the fact that the company in that case had made an assignment for the benefit of creditors. *A fortiori* the court has no power to order the funds thus deposited out of the hands of the state treasurer into the custody and control of a receiver.

The question presented by this motion then narrows itself to the question: Shall a receiver be appointed of the assets of the company now in its hands, who shall also make all necessary collections from the stockholders, or shall the company be permitted to retain such assets and itself make distribution of them, as well as the necessary collections from stockholders?

Giving the petition in this case a liberal construction it may be said to be an action for the rescission of a contract for an accounting, alleging an indebtedness to plaintiff and the insolvency of the company.

But a petition by a simple contract creditor which merely alleges insolvency of the corporation does not state facts which authorize the appointment of a receiver. The position of this court on that question is fully stated in the case of the North Fairmount Building Association v. Rehn, 6 N. P., 185 , (see also Jay v. Squire, 7 N. P., 345,) and C. H. & D. R. R. Co. v. Duckworth, 2 C. C., 518.

The defendant company has also in open court offered to pay to both the plaintiff and Kuhlman, the intervening cross-petitioner, the full amount of money paid by them to the company with interest, although it denies liability for interest, but the offer has been declined. But the appointment of a receiver will not be made on the application of a creditor who has been tendered the amount due him. Nixon Co. v. Southern Land & L. Co., 53 S. C., 364.

By this offer and refusal the action, too. is converted into an action for a receiver to wind up a corporation without proof on the hearing that the defendant company intends to fraudulently dispose of its property. No such action is known either in law or equity.

Furthermore it appears that by the laws of West Virginia, under which this company was organized, a majority of the stockholders may decide to go out of business (Vol. 3 Annotated Corp. Laws of all States, page 20) ; and it further appears that such action has been taken by this company, and if not interfered with it will distribute to its creditors all of its assets at a merely nominal cost. It was held in the case of North Fairmount Building Association v. Rehn, *supra*, that when under our statute, Section 5867, a corporation was proceeding to wind up its own affairs a receiver would not be appointed on the mere ground of insolvency. The same principle ought to apply in the case of a foreign corporation honestly engaged in winding up its affairs with all of its property in this state.

Furthermore, if this company is insolvent, its liabilities appear not to exceed its assets by an amount greater than can probably be made up by the solvent stockholders who stand ready to respond to any proper contribution that is required of them.

But it is intimated that the officers of this company by engaging in an unlawful and fraudulent business have forfeited the confidence of the court and that they ought not to be trusted to wind up the affairs of the company.

It is true that the Supreme Court has declared the business unlawful, but it has not found that the officers were guilty of any *actual* fraud. The business was investigated by both the Federal and State authorities and declared to be lawful; and no fact is now known to those authorities which was not known at the time they declared the business lawful. If the Federal and State authorities acting under their oaths of office, after a thorough investigation of the scheme of this company, believed and declared it to be lawful, and feasible ought we not to give to the officers of the company the

presumption at least that they also believed the scheme to be an honest one.

There are 7,708 persons holding certificates in this company and 95 stockholders; yet only two certificate holders representing certificates, one of $6 and the other of $192.50, insist on having a receiver appointed. All the remaining certificate holders and all the stockholders are opposed to a receivership. Their action in my judgment is founded on the plainest principles of sound business policy. To fasten a receivership on this company with its attendant attorneys for the receiver and the large fees that would be demanded, and in all probability, ultimately paid out of the assets of the company, would in my opinion ,under the circumstances, be nothing less than a confiscation of a substantial part of its property. I shall endeavor in winding up the affairs of this company to avoid every unnecessary expense, in order that the assets of the company may be distributed among the certificate holders at a minimum cost. The appointment of a receiver is only justified by the necessity of preserving the property in litigation. But, in a case such as this, where the assets are money and · securities readily convertible into money, and where the officers intend to honestly distribute the assets among the creditors, the appointment of a receiver could not be justified on the ground of its necessity for the preservation of the assets; because its only effect would be the impairment of the assets.

The company, as an evidence of its good faith, has voluntarily tendered a bond, with good security, in the sum of $100,000, that it will honestly administer the assets in its hands. The practice of requiring a bond in partnership cases where a winding up of the partnership is sought, has been followed in a number of cases. Harrison et al v. Cotton State Co., 78 Ga., 716; 7 Cal., 551; Hopper v. Schneider, 7 Abbott's Practice, 56; Savenos v. Levy, 1 New York State Reporter, 758; Beach on Receivers, section 562.

Whether this practice can ever be extended to the case of a corporation which is to be wound up, and the corporation compelled to submit to the appointment of a receiver or to the giving of a bond as a substitute, is a question not necessary here to determine.

The defendant company has voluntarily tendered its bond, and it will be accepted and ordered filed.

Harrison & Aston and W. W. Symmes for plaintiff.

Louis J Dolle for defendant.